

U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Ave NW, Rm. 7234
Washington, D.C. 20530-0001

Teal Luthy Miller

Tel: (202) 514-5048
Fax: (202) 514-7964

July 29, 2009

Richard Cushing Donovan
Clerk, United States Court of Appeals
 for the First Circuit
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re:   *Morse v. Rudler (in re Rudler)*, No. 08-9007

Dear Mr. Donovan:

Defendants submit this letter under Rule 28(j), Fed.R.App.P., to call attention to the Seventh Circuit's decision in *Brothers v. Turner (In re Turner)*, --- F.3d ----, 2009 WL 2136867, (7th Cir. Jul. 20, 2009).

*Turner* holds that a Ch. 13 debtor is not entitled to deduct mortgage payments on his means test when he has indicated that he will surrender the property securing the mortgage. In reaching this conclusion, the 7th Circuit stated as follows regarding 11 U.S.C. § 707(b)(2)(A)(iii)(I), the provision of the Bankruptcy Code at issue in this case:

> Turner ascribes significance to a provision relating the conversion of a Chapter 7 bankruptcy to a Chapter 13 bankruptcy: "the debtor's average monthly payments on account of secured debts shall be calculated as the sum of the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. § 707(b)(2)(A)(iii)(I). Turner infers from this that the amount of the debtor's payments on account of secured debts, such as a debt secured by a mortgage, must be calculated as of the date of the petition. But that is not what the provision says. It merely specifies that the date of the petition is the date on which the payment period begins."

*In re Turner*, 2009 WL 2136867, at *5.

While *Turner* concerns Ch. 13 and this case concerns Ch. 7, the Court's conclusion that the last phrase of Section 707(b)(2)(A)(iii)(I) – "following the date of the petition" – does not indicate that average monthly payments on account of secured debts must be calculated as of the date of the petition is relevant here. The Court's determination that the means test should take into account the debtor's intention to surrender the property securing the debt supports the United States Trustee's argument that the statute calls for a forward-looking assessment of which payments on secured debts will actually be made and are thus properly listed (or "scheduled") as "payments on account of a secured debt."

Sincerely,

Teal Luthy Miller

cc:   Scott W. LaPointe, Esquire,
      Brown & LaPointe, P.A.
      128 Main Street
      Epping, NH 03042

Westlaw.

--- F.3d ----
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 1

H
Only the Westlaw citation is currently available.

United States Court of Appeals,
Seventh Circuit.
In re Joel Anthony **TURNER**, Debtor.
No. 08-2163.

Argued May 12, 2009.
Decided July 20, 2009.

Appeal from the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. No. 07-06592-James K. Coachys, Bankruptcy Judge.
David J. Jurkiewicz, Attorney, Bose McKinney & Evans, LLP, Indianapolis, IN, for Robert A. Brothers.

James J. Haller, Attorney, Mueller & Haller, Belleville, IL, for Debtor.

William A. McNeal, Becket & Lee, LLP, Malvern, PA, for Ecast Settlement Corporation.

David I. Gold, P. Matthew Sutko, Associate General Counsel, Department of Justice Executive Office for U.S. Trustees, Washington, DC, for United States of America.

Before POSNER and SYKES, Circuit Judges, and VAN BOKKELEN, District Judge.[FN*]

FN* Of the Northern District of Indiana, sitting by designation.

POSNER, Circuit Judge.

*1 Joel **Turner** filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. With the petition, he submitted-as he was required to do-a plan that would distribute his entire "projected disposable income" to his unsecured creditors in installments. When he filed his plan he was making monthly mortgage payments of $1,521. The mortgage expense of a Chapter 13such as **Turner**, whose family income exceeds the median income of families in his state is deducted from his income to determine his "disposable income." 11 U.S.C. § 1325(b)(1); *id.*, § 707(b)(2)(A)(ii)(I); Form B22C ("Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income", www.uscourts.gov/rules/BK_Forms_08_Official/B_022C_0108f.pdf (visited June 3, 2009)); see *Schultz United States,* 529 F.3d 343, 352 (6th Cir.2008); *In re Lanning,* 380 B.R. 17, 20-21 (10th Cir.BAP2007); *In re Kagenveama,* 541 F.3d 868, 880 n. 3 (9th Cir.2008) (separate opinion). (Another consequence of the fact that **Turner's** family income exceeds the median family income in his state is that he has to pay installments for "not less than" five years. 11 U.S.C. § 1325(b)(4)(A)(ii). His plan proposes a five-year payment period.)

Although **Turner** stated in the plan that he intended to abandon the house to the mortgagee, which would have the same effect as foreclosure in canceling the mortgage, he subtracted the $1,521 monthly mortgage payments from his projected disposable income for the entire period over which he would be paying his unsecured creditors. Yet the mortgage and the debt it secures (for he does not contend that the mortgagee will seek a deficiency judgment against him) will be canceled before **Turner** is required to make any payments to his unsecured creditors under an approved Chapter 13 plan.

The trustee in bankruptcy, representing the unsecured creditors, objected to the deduction of the monthly mortgage payment (multiplied by 60, the number of months the plan was to remain in effect)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 2

from Turner's disposable income and thus from the amount available to the unsecured creditors. The bankruptcy judge rejected the objection, *In re Turner*, 384 B.R. 537 (Bankr.S.D.Ind.2008), but because of the importance of the issue certified his order for a direct appeal to this court. He was right to do that. The issue is indeed important. In the wake of the bursting of the housing bubble, which precipitated the current economic downturn, many mortgagors either cannot meet their mortgage obligations, or, because their house is now worth less than the unpaid balance of their mortgage, consider the house a bad investment. In either event they may want to abandon the house to the mortgagee, as in this case, hoping that, spared the expense of a foreclosure proceeding, the mortgagee will not seek (in those states where he is permitted to do so) a deficiency judgment for the difference between the unpaid balance of the mortgage and the market value of the house. But Turner contends that the trustee's appeal was not perfected and must therefore be dismissed for want of appellate jurisdiction, and we begin our discussion of the appeal with that issue.

*2 Section 1233(b) of the awkwardly named Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23, 202-03, specified temporary procedures, applicable to this case but since superseded, for taking direct appeals from the bankruptcy court to the court of appeals. The appellant was required to file a notice of appeal in the bankruptcy court within 30 days after that court's decision; either that court or all the parties to the potential appeal had to certify that the ruling sought to be appealed satisfied criteria set forth in 28 U.S.C. § 158(d)(2)(A); see also *id.*, § 158(a); the appellant had to petition the court of appeals, within 10 days of the docketing of the certification, for leave to appeal; and "subject to any other provision of this subsection, [the] appeal ... shall be taken in the manner prescribed in subdivisions (a)(1), (b), (c) and (d) of rule 5 of the Federal Rules of Appellate Procedure."

The appellant (the trustee) filed his notice of appeal within the specified time (30 days), the bankruptcy court entered its certification order, and on the same day the clerk of that court transmitted to our court both the certification order and the trustee's request for certification, which he had filed with the bankruptcy court and which that court had granted. Our court docketed the appeal, and after the bankruptcy court transmitted the record of the case to us and the trustee filed a docketing statement we granted leave to appeal. But the trustee had not filed a petition for leave to file an appeal, and we must decide whether his oversight was fatal.

The material that the bankruptcy court transmitted to this court contained everything that the petition for review would have contained, and was filed within the 10-day deadline for filing such a petition. It contained the information concerning the identity of the parties and the order being appealed that the petition would have contained, plus the reasons why this court should grant leave to appeal-for they were the same reasons that the trustee, in the request for certification that he had filed with the bankruptcy court, had presented to that court when it asked that court to certify the case for direct appeal to this court. (For remember that the request was included in the papers transmitted to this court by the bankruptcy court.) Turner, the appellee, did not oppose the trustee's request for certification; nor does he present any opposition to it in this court.

So the filing in this court was both complete and timely, and the only irregularity besides the lack of the proper label ("petition for review") was that the "petition" was transmitted to our court by the clerk of the bankruptcy court rather than by the appellant. Notices of appeal, petitions for review, and other pleadings are generally submitted by an agent of the litigant rather than by the litigant himself, unless he is unrepresented. Normally the agent is the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))  
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 3

litigant's lawyer. In this case it was the clerk of the bankruptcy court. No purpose behind the statutory requirements for perfecting a direct appeal to the court of appeals in a bankruptcy case was disserved. Rule 5(b) of the appellate rules specifies the information that a petition for leave to appeal must contain; the transmittal by the bankruptcy court's clerk to our court contained it. Had the trustee filed a petition for review, it would have been a copy of the certification and of the request for certification; since **Turner** did not object to the request for certification, there was nothing for the trustee to respond to in a petition for review.

*3 Turner was not fooled by the label. He proceeded exactly as he would have done had the label been correct. He did not think to challenge appellate jurisdiction until his appeal brief, which was filed long after a motions panel of this court had granted leave to appeal. The point is not that Turner waived his right to challenge our jurisdiction but that the trustee's failure to file a notice of appeal confused no one.

The circumstances that we have described bring the case within the principle that "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316-17 (1988). (We do not take "a *litigant* files" to confine the principle to cases in which the appellant is proceeding pro se and thus files his pleadings himself rather than through an agent; Torres was represented, and the jurisdictional default resulted from a mistake by his lawyer's secretary.) It is true that the Court refused to excuse the failure of the notice of appeal to list Torres as an appellant. But it did so because it interpreted Rule 3(c) of the federal appellate rules, in light of an advisory committee note and Rules 4 and 26(b), to make the requirement of naming the appellant jurisdictional. And it pointed out that non-compliance with the requirement "would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions." 487 U.S. at 318. Those rules, and that consideration, are not present in this case.

In *Smith v. Barry*, 502 U.S. 244, 248 (1992), the Supreme Court treated an appeal brief as a notice of appeal, and in *Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir.2005), the Second Circuit treated an appeal brief as the equivalent of a petition for review. We treated a petition for interlocutory appeal as a notice of appeal in *Remer v. Burlington Area School District*, 205 F.3d 990, 994-95 (7th Cir.2000), because it contained all the information required in such a notice, and more. In *Listenbee v. City of Milwaukee*, 976 F.2d 348, 350-51 (7th Cir .1992), we treated as the notice of appeal a motion for an extension of time within which to file the notice. *Berrey v. Asarco Inc.*, 439 F.3d 636 (10th Cir.2006), is illustrative of numerous similar cases.

*Smith* and *Remer* are particularly germane because in both the documentation that was filed was a good deal more comprehensive than the documentation-a simple notice of appeal-that was required to be filed. Filing too much, like filing too soon, is a good example of "functional equivalence," because the functional requirement would be satisfied by the lesser included documentation. It is therefore worth emphasizing how much was transmitted by the bankruptcy clerk to this court-not mere portions of a lower-court record but: (1) a notice of appeal; (2) the trustee's nine-page request for certification of a direct appeal; (3) the certification order; and (4) the short record. The case is unlike Torres, where critical information was missing, and *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228 (11th Cir.2007), where the only thing filed was a notice of appeal so that again critical information was missing. In this case no information was missing.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 4

*4 We don't mean to trivialize the requirement of filing a petition for review; in another case the failure to comply might well be fatal. The petition is more than a mere notice, the notice requirement being satisfied by the filing of a notice of appeal. It is a substantive pleading intended to persuade the appellate court to accept an appeal. But there *was* such a pleading in this case: the request that the bankruptcy court certify the case for an appeal to this court. All the substance-all the information-that a petition for review would have contained was contained in the documents transmitted by the bankruptcy court.

Had Turner challenged the request for certification, it would have behooved the trustee to meet the challenge in a petition for review lodged with this court. But there was, as we said, no challenge, and hence the petition would have said nothing that was not in the request for certification-the request transmitted to us and treated by us as the petition for review, which in every respect except label it was. The point is not that the transmitted documents cover much the same ground that a petition for review must cover; they cover the entire ground.

By the same token, this is not a case in which judicial lenity rewards a lazy litigant. The trustee did everything that he would have done had he filed a petition for review except relabel the request for certification as a petition for review and mail the relabeled document to this court. He should not be penalized because the clerk of the bankruptcy court did the mailing for him.

And we have yet to consider the bearing of the provision of the appeal statute that "subject to any other provision of this subsection, [the] appeal ... shall be taken in the manner prescribed in subdivisions (a)(1), (b), (c) and (d) of rule 5 of the Federal Rules of Appellate Procedure."Rule5, as we know, specifies the requirements for a petition seeking leave to appeal, and Rule 2 authorizes the court of appeals, on its own or a party's motion, to suspend, for any good reason, any of the appellate rules. There is an exception for rules prescribing time limits for filing a petition for leave to appeal, Fed. R.App. P. 26(b)(1), but timeliness is not the issue in this case, and so we are authorized to treat as a petition for review a filing that does not comply with Rule 5. *Blausey v. United States Trustee,* 552 F.3d 1124, 1130 (9th Cir.2009).

And while *Bowles v. Russell,* 551 U.S. 205 (2007), holds that a statutory deadline for filing a notice of appeal is jurisdictional, the 30-day statutory deadline was met. There is no hint in *Bowles* that any other requirement for such a notice, or for some equivalent such as the petition for review in this case, is jurisdictional; appeal deadlines are uniquely significant because an appellee is entitled to the security of knowing that once the deadline is passed he is home free. Other requirements for perfecting an appeal, whether imposed by statute or by court rule, are important and should be complied with. But the failure to comply with a rule that is not jurisdictional-and we repeat that requirements for perfecting an appeal that do not involve deadlines are not jurisdictional-is not fatal if no one is harmed by the failure, and in this case there was not the slightest harm, or even minor inconvenience, to anybody.

*5 It is not as if Turner missed a chance to oppose a formal petition for review, as allowed by Fed. R.App. 5(2)(b); he has never complained either that he was surprised when this court set the case for briefing or that he would have contested the petition; for remember that he did not contest an identical pleading in the bankruptcy court-the request for certification. The only irregularity was that the appeal papers were lodged with us by the lower court rather than by the appellant's lawyer, and we hesitate to call such an irregularity an impropriety; we are not even sure it should be called an error. Nothing in the statutes governing bankruptcy appeals limits the "agents" who may file on behalf of an appellant or bars an appellant from having ratified a gratuitous agency undertaken by

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 5

the clerk of a bankruptcy court. Rule 32(j)(2) of the federal criminal rules provides an analogy: it authorizes the clerk of the district court to file a notice of appeal on a criminal defendant's behalf.

We thus find ourselves in agreement with the only previous case involving the kind of bobble involved in this case, *Blausey v. United States Trustee, supra*-and anyway it would be pointless to create a circuit split over so transitory, so ephemeral, an issue, and to do so in attempted vindication of a harsh rule that has no basis in any case, or in practical need, or in considerations of justice or efficiency.

So we can proceed at last to the merits. Both parties labor mightily to extract from the language of the Bankruptcy Code guidance to whether an expense that affects the debtor's obligation to his unsecured creditors and that by the debtor's own declaration is certain to evaporate before the bankruptcy plan is approved by the bankruptcy judge must nevertheless be treated as if it would persist throughout the entire period during which the plan will be in effect. Chapter 13 does say that the plan, in order to be approved, must provide "that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). But it is unclear as a matter of semantics whether "projected" in the statute means "expected," on the one hand, or mechanically extrapolated from the debtor's disposable income as calculable from the plan submitted by him, on the other.

**Turner** ascribes significance to a provision relating the conversion of a Chapter 7 bankruptcy to a Chapter 13 bankruptcy: "the debtor's average monthly payments on account of secured debts shall be calculated as the sum of the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. § 707(b)(2)(A)(iii)(I). **Turner** infers from this that the amount of the debtor's payments on account of secured debts, such as a debt secured by a mortgage, must be calculated as of the date of the petition. But that is not what the provision says. It merely specifies that the date of the petition is the date on which the payment period begins.

*6 **Turner** is left to argue that what he calls the "mechanical" approach to determining projected disposable income is superior to the "forward-looking" approach advocated by the trustee, because it is simpler. But it isn't simpler. Both approaches are mechanical, at least so far as this case is concerned. One multiplies $1,521 by 60; the other multiplies $0 by 60. All that is at issue is whether the expense to be multiplied must be the one owed on the date the plan was submitted, even though it will not be owed on the date the plan is approved. If the trustee were arguing for some complicated method of estimating ups and downs in **Turner's** disposable income over the next five years, we would be presented with a different case. *In re Solomon*, 67 F.3d 1128, 1130-32 (4th Cir.1995).

For some purposes-for example, determining whether the debtor is eligible for a Chapter 13 bankruptcy-his financial situation on the date of the filing of the declaration of bankruptcy *will* govern, in order that the right procedural vehicle (for example, whether it should be Chapter 13 or Chapter 7) can be determined at the outset. *In re Pearson*, 773 F.2d 751, 756-58 (6th Cir.1985); *In re Scovis*, 249 F.3d 975, 981-82 (9th Cir.2001). This approach is consistent with the principle that jurisdiction is determined by the facts as they exist when a case is filed and is unaffected by a subsequent change in those facts, such as a change of the state of residence by a party to a diversity suit. E.g., *Morgan's Heirs v. Morgan*, 15 U.S. 290, 297 (1817) (Marshall, C.J.); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 80-81 (7th Cir.1995); *American Fiber*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 6

& *Finishing, Inc. v. Tyco Healthcare Group, LP,* 362 F.3d 136, 139 (1st Cir.2004). But that is not a problem in this case; **Turner's** eligibility to proceed under Chapter 13 is not in question.

Since the object of a Chapter 13 bankruptcy is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we cannot see the merit in throwing out undisputed information, bearing on how much the debtor can afford to pay, that comes to light between the submission and approval of a plan of reorganization. Sometimes as in this case the creditors will benefit from the new information. But in other cases it will be the debtor, *In re Solomon, supra,* 67 F.3d at 1130-31; *In re Kibbe,* 361 B.R. 302, 314 (1st Cir.BAP2007) (per curiam); *In re Petro,* 395 B.R. 369, 376 (6th Cir.BAP2008), because the expenses that are deductible in determining his disposable income are as likely to rise unexpectedly between the dates of submission and approval as to fall (and his income, as in *Kibbe* and *Petro,* is as likely to fall as to rise).

The use of the later date, which is consistent with the statutory language though not compelled by it, is more sensible. Cf. *Kawitt v. United States,* 842 F.2d 951, 953 (7th Cir.1988); *City of Stilwell v. Ozarks Rural Electric Co-operative Corp.,* 166 F.3d 1064, 1072 (10th Cir.1999). We therefore agree with the Eighth Circuit in *In re Frederickson,* 545 F.3d 652, 659-60 (8th Cir.2008), that while the calculation of "disposable income" in the plan submitted by the debtor "is a starting point for determining the debtor's 'projected disposable income,'... the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances."To the same effect, see *In re Lanning,* 545 F.3d 1269, 1278-82 (10th Cir.2008). *In re Kagenveama, supra,* 541 F.3d at 873-75, is to the contrary. There is disagreement among bankruptcy judges as well. Compare, e.g., *In re Petro, supra,* 395 B.R. at 376; *In re Kibbe, supra,* 361 B.R. at 314-15, and *In re Hardacre,* 338 B.R. 718, 722 (Bankr.N.D.Tex.2006), with, e.g., *In re Austin,* 372 B.R. 668, 677-78 (Bankr.D.Vt.2007); *In re Nance,* 371 B.R. 358, 362-65 (Bankr.S.D.Ill.2007), and *In re Kolb,* 366 B.R. 802, 812-17 (Bankr.S.D.Ohio 2007). But most of them have adopted the position we're adopting.

*7 Although some judges, like the trustee in our case, call this the "forward-looking" approach, bankruptcy judges must not engage in speculation about the future income or expenses of the Chapter 13 debtor. That would unsettle and delay the Chapter 13 process as well as exaggerate how accurately a person's economic situation in five years can be predicted. But in this case there is no speculation; all that is at issue is a fixed debt that we know will disappear before the Chapter 13 plan is approved.

A fixed *debt* that will disappear: the deduction of mortgage expense from the Chapter 13 debtor's disposable income is not intended to enrich the debtor at the expense of his unsecured creditors. It is intended to adjust the respective rights of a secured creditor-the mortgagee-and the unsecured creditors. **Turner** wants to use a phantom deduction to reduce the recovery by his unsecured creditors without benefiting any other creditor.

So the decision of the bankruptcy court must be reversed. But for completeness we note our disagreement with the trustee's alternative argument that **Turner's** plan was submitted in bad faith, and thus in violation of 11 U.S.C. § 1325(a)(3), which requires confirmation only of a plan "proposed in good faith and not by any means forbidden by law."A plan does not violate this provision merely because it contains, fully disclosed, an arguable claim rejected in the course of the bankruptcy proceeding. *In re Belt,* 106 B.R. 553, 572 (Bankr.N.D.Ind.1989). It is not bad faith to seek to advance one's economic interests by making a claim based on a defensible view of one's legal

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))  
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 7

rights, even if the view ends up being rejected-in this case by an appellate court after the first-line decision maker ruled in favor of the claimant.

But for the reasons stated earlier, the order of the bankruptcy court is

REVERSED.

VAN BOKKELEN, District Judge, concurring in part and concurring in the judgment.

For the reasons stated in *Blausey v. U.S. Trustee,* 552 F.3d 1124 (9th Cir.2009), I agree with Judge Posner's conclusion that the bankruptcy trustee's failure to file a petition for permission to appeal in this Court does not prevent the Court from reaching the merits of the case. Moreover, I join in Judge Posner's opinion reversing the bankruptcy court's order overruling the trustee's objection to confirmation of the debtor's Chapter 13 plan.

SYKES, Circuit Judge, dissenting.

This is a direct appeal of an order of the bankruptcy court, bypassing an appeal to the district court or the bankruptcy appellate panel. Our jurisdiction is permissive, and to invoke it the trustee was required to: (1) obtain an order from the bankruptcy court certifying the ruling for direct review by the court of appeals; and (2) within 10 days of the docketing of the certification, file with the circuit clerk a petition requesting this court's permission to appeal. *See* 28 U.S.C. § 158(d)(2)(A) and note, Pub.L. No. 109-8, Title XII, § 1233(b)(3)-(4), 119 Stat. 202-203 (2005). The trustee obtained the necessary certification from the bankruptcy court but never filed a petition for permission to appeal. The bankruptcy clerk sent us portions of the record anyway, a few days after the bankruptcy court issued the certification.

*8 A timely petition for permission to appeal is a statutory requirement and sufficiently akin to a notice of appeal as to be jurisdictional under *Bowles v. Russell,* 551 U.S. 205, 127 S.Ct. 2360, 2366 (2007) ("Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement."). As such, the trustee's failure to file one requires dismissal of the appeal. The majority sidesteps this jurisdictional defect by construing the bankruptcy clerk's premature transmittal of the record as the functional equivalent of a petition. Because this stretches the concept of "functional equivalence" too far, I respectfully dissent.

As the majority notes, the Bankruptcy Abuse and Consumer Protection Act of 2005 authorizes, in limited circumstances, direct appeals to the courts of appeals from final orders or judgments of the bankruptcy courts. 28 U.S.C. § 158(d)(2). Our jurisdiction to hear a direct bankruptcy appeal is governed by the requirements of § 158(d)(2) and, in this case, certain temporary, uncodified procedural provisions of the Act intended to apply until permanent procedural rules were promulgated. *See* 28 U.S.C. § 158 note, Pub.L. No. 109-8, Title XII, § 1233(b) 119 Stat. 203 (2005). (As the majority notes, the permanent rules have since been adopted, but this case came to us when the interim statutory provisions were in effect.)

The Act permits the appellate courts to exercise jurisdiction over direct appeals from the bankruptcy courts *if* the bankruptcy court certifies that the judgment, order, or decree meets certain statutory criteria for review 「N」*and* the court of appeals authorizes the direct appeal. 28 U.S.C. § 158(d)(2)(A). Under the temporary procedural provisions of the Act, the appellant must file a petition for permission to appeal with the circuit clerk "not later than 10 days after the certification is entered on the docket of the bankruptcy court." 28 U.S.C. § 158 note, Pub.L. No. 109-8, Title XII, § 1233(b)(4), 119 Stat. 203 (2005). These provisions also incorporate by reference most of Rule 5 of the *Federal Rules of Appellate Procedure* pertaining to appeals by permission: "Subject to any other provision of this subsection, an appeal authorized by the court of appeals under section 158(d)(2)(A) of title 28, United States Code, shall be taken in the manner

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))  
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 8

prescribed in subdivisions (a)(1), (b), (c), and (d) of rule 5 of the Federal Rules of Appellate Procedure."28 U.S.C. § 158 note, Pub.L. No. 109-8, Title XII, § 1233(b)(3), 119 Stat. 203 (2005).

> FN1. The direct-review criteria are: "the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court ... or involves a matter of public importance"; or "involves a question of law requiring resolution of conflicting decisions"; or "an immediate appeal ... may materially advance the progress of the case."28 U.S.C. § 158(d)(2)(A)(i)-(iii). The certification may be made by the bankruptcy court, the district court, or the bankruptcy appellate panel, on the court's own motion or on the request of the party. Alternatively, the certification may be made by "all the appellants and appellees (if any) acting jointly."*Id.* § 158(d)(2)(A).

Rule 5, in turn, provides that "[t]o request permission to appeal when an appeal is within the court of appeals' discretion, a party must file a petition for permission to appeal."FED. R.APP. P. 5(a)(1). The petition "must be filed with the circuit clerk with proof of service on all other parties."*Id.* The petition "must include the following: (A) the facts necessary to understand the question presented; (B) the question itself; (C) the relief sought; [and] (D) the reasons why the appeal should be allowed and is authorized by a statute or rule."FED. R. APP. P. 5(b)(1). The petition must also attach a copy of the "order, decree, or judgment complained of and any related opinion or memorandum" and "any order stating the district court's permission to appeal or finding that the necessary conditions are met."FED. R.APP. P. 5(b)(1)(E). Any party opposing the appeal "may file an answer in opposition or a cross-petition within 7 days after the petition is served."FED. R.APP. P. 5(b)(2).

\*9 The trustee never filed a petition for permission to appeal. Instead of dismissing for lack of appellate jurisdiction, however, the majority treats the bankruptcy clerk's transmittal of portions of the record as the "functional equivalent" of a timely filed petition, deputizing the bankruptcy clerk as the trustee's "agent" and finding within the contents of the transmittal all the substantive information required in a valid petition for permissive appeal. Maj. op. at pp. 4-10.I cannot agree with this approach.

The Supreme Court has held that a timely appellate pleading that is the functional equivalent of a notice of appeal may be construed as a notice of appeal for purposes of satisfying the jurisdictional prerequisites of Rules 3 and 4 of the *Federal Rules of Appellate Procedure. See Smith v. Barry,* 502 U.S. 244, 248 (1992). As the majority notes, in *Smith* an appellate brief filed by a pro se appellant within the time limit for a notice of appeal was accepted as the functional equivalent of a notice of appeal. *Id.* The Second Circuit has applied this functional-equivalence standard in the context of discretionary appeals, accepting an appellate brief filed within the time limit for a petition for permission to appeal as the functional equivalent of a petition. *See Casey v. Long Island R.R. Co.,* 406 F.3d 142, 146 (2d Cir.2005). I have no quarrel, as a general matter, with applying this test here.

But the functional-equivalence principle is not limitless, nor quite so elastic as the majority supposes. The Supreme Court has been careful to distinguish between allowing an appellant's functionally equivalent pleading to satisfy a jurisdictional mandate and excusing the appellant's noncompliance altogether. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 315-18 (1988) ("Permitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a jurisdictional threshold."). In this regard, the majority's reliance on *Torres* is misplaced.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))  
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 9

*Torres* involved an appeal by multiple plaintiffs, but due to an error by their lawyer's secretary, the name of Jose Torres, one of the plaintiffs, was omitted from the notice of appeal. The Supreme Court noted that "although a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met."*Id.* at 317.The Court held that Torres had not filed the functional equivalent of a notice of appeal; because he was not named in the notice of appeal, he had not filed a notice of appeal at all. Id. ("Petitioner did not file the functional equivalent of a notice of appeal; he was never named or otherwise designated, however inartfully, in the notice of appeal filed by the 15 other intervenors."). Accordingly, the Court affirmed the dismissal of Torres's appeal for lack of jurisdiction. *Id.* at 318.

*10 The same result is required here. Under *Bowles*, a timely petition for permission to appeal is a jurisdictional requirement. The trustee did not file the functional equivalent of a petition for permission to appeal within the applicable time limit for filing a petition; indeed, he did not file *anything* within the time limit for filing a petition. The majority permits the bankruptcy clerk's premature transmittal of a portion of the record to stand as the trustee's "petition." This is a significant and unwarranted expansion of the functional-equivalence principle.

The requirements of Rule 5 make it clear that a petition for permission to appeal functions as more than a mere notice; it is a substantive adversarial pleading intended to persuade the appellate court to accept the case. Unlike a notice of appeal, which serves a basic notice function in an appeal as-of-right, a petition for permission to appeal initiates an adversarial and decisional process on the question of whether the appellate court should, in its discretion, permit the appeal in the first place. See *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.,* 475 F.3d 1228, 1231 (11th Cir .2007) (distinguishing the functions of a notice of appeal and a petition for permission to appeal and refusing to permit a notice of appeal to serve as the equivalent of a petition for permission to appeal). The petition must contain the question presented, the facts necessary to understand it, the relief sought, and the reasons why the appeal should be allowed; it must also attach a copy of the order appealed from and any order of the lower court stating that an immediate appeal is appropriate. *See*FED. R.APP. P. 5(b)(1)(A)-(E). Opposing parties are allowed seven days after service of the petition to respond or file a cross-petition. *See*FED. R.APP. P. 5(b)(2).

The clerk's transmittal of the lower-court record does not serve these functions. This is so even if (as here) the record contains the appealing party's request that the lower court certify its order for appellate review as well as the lower court's certification order.[FN2]Although these documents may cover much the same ground that a petition must cover, when contained in a routine record transmittal, they do not perform the function of a petition in several important respects: They do not trigger the opponent's seven-day response period, and they do not request a ruling from this court on the question of whether leave to appeal should be granted.[FN3]

> FN2. The portion of the record transmitted to this court also included the trustee's notice of appeal, but it is well established that a notice of appeal cannot substitute for a petition for permission to appeal. See, e.g., *Estate of Storm v. Nw. Iowa Hosp. Corp.,* 548 F.3d 686, 688 (8th Cir.2008); *Main Drug,* 475 F.3d at 1231; *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.,* 415 F.3d 1171, 1175 (10th Cir.2005); *Rodriguez v. Banco Cent.,* 917 F .2d 664, 668 (1st Cir.1990); *Inmates of the Allegheny County Jail v. Wecht,* 873 F.2d 55, 57 (3d Cir.1989); *Aucoin v. Matador Servs., Inc.,*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))  
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 10

749 F.2d 1180, 1181 (5th Cir.1985); *In re La Providencia Dev. Corp.*, 515 F.2d 94, 95-96 (1st Cir.1975); *Hanson v. Hunt Oil Co.*, 488 F.2d 70, 71-72 (8th Cir.1973); 16A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 3951 (4th ed.2008).

FN3. That a motions panel of this court authorized the appeal in the absence of a petition seeking permission to appeal is irrelevant. Decisions by a motions panel do not definitively resolve jurisdictional questions; we are free to reexamine-indeed we must reexamine-the question of appellate jurisdiction when the merits are heard. *United States v. Henderson*, 536 F.3d 776, 777 (7th Cir.2008). That the failure to file a petition "confused no one," maj. op. at p. 6, is likewise irrelevant. Jurisdictional defects require dismissal regardless of prejudice.

Thus, what my colleagues accept in satisfaction of the jurisdictional mandate is defective in both form and function. In this regard, I think it highly significant that the materials comprising this makeshift "petition" came to us not from the trustee as the party seeking leave to appeal but from the clerk of the bankruptcy court. The majority permits the clerk's action to substitute for the trustee's inaction by dubbing the clerk the trustee's "agent" for purposes of initiating the appeal. This is a novel form of agency. I know of no basis-in this specific situation or generally-for allowing the spontaneous action of a court clerk to discharge the jurisdictional obligations of the appealing party.[FN4]

FN4. The majority suggests that Rule 32(j)(2) of the *Federal Rules of Criminal Procedure* is analogous. I disagree. Rule 32(j)(2), a subsection of the rule governing the obligations of the district court at sentencing, requires the court clerk, "*[i]f the defendant so requests*," to "immediately prepare and file a notice of appeal on the defendant's behalf." FED.R.CRIM.P. 32(j)(2) (emphasis added). This requirement, for the special protection of the appeal rights of criminal defendants, has no bearing on the jurisdictional analysis here, by analogy or otherwise. Rule 32(j)(2) is just that-a rule-and it specifically requires the clerk to act at the behest of the defendant. Here, in contrast, my colleagues have created an *exception* to a statutory jurisdictional rule, permitting the clerk's unilateral action-unbidden by the appealing party-to substitute for the appealing party's *failure* to act.

*11 This distinction must make a difference if *Torres* means what it says: "Permitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a jurisdictional threshold." 487 U.S. at 315-16. The trustee did not comply "imperfect[ly] but substantial[ly]" with the jurisdictional requirement, he did not comply *at all*. The majority has effectively waived the trustee's total noncompliance with the applicable jurisdictional prerequisite; its jurisdictional holding is necessarily out of step with the rationale of *Torres*.[FN5]

FN5. The provision in Rule 3 at issue in *Torres*-requiring a notice of appeal to specify the party or parties taking the appeal-was modified in response to *Torres* to permit courts to accept a notice of appeal that does not specifically name an appealing party if that party's "intent to appeal is otherwise clear from the notice." FED. R.APP. P. 3(c)(4); *see also Cleveland v. Porca Co.*, 38 F.3d 289, 293-94 (7th Cir.1994) (discussing *Torres* and the rules change that followed it). Despite this change in the rule, the rationale of *Torres* remains intact; there is a difference between accepting in-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))  
(Cite as: 2009 WL 2136867 (C.A.7 (Ind.)))

Page 11

exact but substantial compliance with a jurisdictional requirement and waiving a jurisdictional requirement altogether.

To the extent the trustee's functional-equivalence argument rests on Rule 2 of the *Federal Rules of Appellate Procedure*, he clearly cannot prevail. Rule 2 permits the appellate courts to suspend any provision of the appellate rules for "good cause"-a broad grant of discretion that parallels the functional-equivalence principle. But Rule 2 does not permit the appellate courts to suspend *statutory* provisions, and here, a timely and Rule 5 compliant petition for permission to appeal is a statutory requirement. Moreover, Rule 2 is itself limited by the provisions of Rule 26(b).*See*FED. R.APP. P. 2 ("[A] court of appeals may-to expedite its decision or for other good cause-suspend any provision of these rules in a particular case ...*except as otherwise provided in Rule 26(b)*." (emphasis added)).Rule 26(b) provides that "the court may not extend the time to file ... a notice of appeal ...*or a petition for permission to appeal*." FED. R.APP. P. 26(b) (emphasis added). Thus, the rules prohibit us from enlarging the time limit for filing a petition for permission to appeal.

I recognize that the majority's approach is consistent with a decision of the Ninth Circuit in a very similar case. *See Blausey v. U.S. Trustee*, 552 F.3d 1124 (9th Cir.2009). I acknowledge as well that both our case and the Ninth Circuit's concern temporary statutory provisions that have now been replaced by permanent rules, and that the issue is therefore "transitory" and perhaps not worth creating a circuit split. Maj. op. at p. 10.But I am convinced that *Blausey* was wrongly decided, for the reasons I have explained; it drew a strong dissent from Judge Gorsuch, sitting with the Ninth Circuit by designation, and I think he was right. 552 F.3d at 1134-37 (Gorsuch, J., dissenting). I am also not so sanguine about the limited effect of the majority's jurisdictional decision. It fashions an exception that swallows a jurisdictional rule. A holding that a court clerk's transmittal of portions of the lower-court record can substitute for the appealing party's total noncompliance with a jurisdictional pleading requirement is potentially quite far-reaching.

Accordingly, for the foregoing reasons, I would dismiss the appeal for lack of appellate jurisdiction.

C.A.7 (Ind.),2009.  
In re Turner  
--- F.3d ----, 2009 WL 2136867 (C.A.7 (Ind.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.